Filed 1/23/14  In re D.A. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.A. et al., Persons Coming Under the Juvenile Court Law. | B247773 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>          Plaintiff and Respondent,<br><br>     v.<br><br>TYESHA A.,<br><br>          Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK59639) |

     APPEAL from orders of the Superior Court of Los Angeles County,
Stephen Marpet, Juvenile Court Referee.  Affirmed.

     John M. Kennedy, under appointment by the Court of Appeal, for Defendant and
Appellant.

     John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and
Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

Tyesha A. (mother) appeals the jurisdictional and dispositional orders of the juvenile court affecting her children Tyra J. and Dominique A.[1]  The main issue on appeal is the sufficiency of the evidence to support the juvenile court's jurisdictional findings under section 300, subdivisions (a), (b), and (j) of the Welfare and Institutions Code.[2]  We conclude there was substantial evidence to sustain the petition.  Therefore, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1.      *Events Leading up to the Section 300 Petition*

On November 1, 2012, 12-year-old Tyra and her sister, 16-year-old Dominique, were reported missing by their maternal grandmother.  The sisters were attempting to run away from home and were later found by a deputy sheriff at a local gas station.  Dominique told the deputy sheriff they called her father to pick them up.  Tyra told the deputy sheriff that she did not want to go home because her mother hits her with a metal spoon on her hand and on the bottom of her feet, and she was afraid she would be hit again.  The deputy sheriff did not see any bruising on Tyra's hand, but when he touched Tyra's hand, she "shrieked in pain."  The deputy sheriff took the children into protective custody.

Tyra told the social worker that she "ran away because her mother keeps hitting her on her hands and feet."  Tyra also told the social worker that she had marks on her back.  The social worker did not see any marks or bruises on Tyra's back, but the social worker did observe that Tyra's hand was swollen.

Dominique told the social worker that Tyra did not want to return home because Tyra gets in trouble and is punished for her poor grades.  Dominique never saw her mother hit Tyra.  Dominique told the social worker that two years ago her mother gave

---

[1]      The respective fathers are not part of this proceeding.

[2]      All further statutory references are to the Welfare and Institutions Code.

2

her a black eye.  Later, Dominique stated that she got the black eye when she ran into something and that her mother never hit her.

Mother admitted being strict and punishing the girls, but she denied hitting her children.  The children were released to mother.

The following day, Tyra was medically evaluated.  Tyra's right finger was swollen and it could not be ruled out that she was hit by a metal spoon.

The Department filed a non-detained petition, alleging serious physical harm and failure to protect.  The petition alleges mother physically abused Tyra "by striking the child's feet and hands with a metal spoon," and the child was afraid of mother and did not want to return home because of the ongoing physical abuse.  (§ 300, subds. (a), (b).)  As to Dominique, the petition alleged that in 2010 mother physically abused her by striking her face, "resulting in the child sustaining bruises to the child's eye."  (§ 300, subds. (a), (b).)  The petition also alleged under subdivision (j) of section 300, there was a substantial risk of abuse of a sibling.  The juvenile court continued the case for adjudication.

2.    *Jurisdictional/Dispositional Hearing*

The reports submitted and entered into evidence at the jurisdictional/dispositional hearing indicated mother had a prior child welfare history that included referrals in Los Angeles, San Bernardino, and Riverside counties with respect to her other children and to a foster child in her care.  The family history of referrals included physical abuse, general neglect, abuse by the fathers, and domestic violence.  Reports of mother's physical abuse of her children began in 2003 through 2010, however most of the allegations were inconclusive or unfounded.  Three referrals resulted in juvenile court proceedings.

In 2009, mother's oldest daughter was detained based upon allegations of mother's physical abuse.  The child ran away from home, and mother became upset and allegedly hit her in the eye.  The record contains conflicting reports of whether the physical abuse was substantiated.  In May 2009, the Riverside County Juvenile Court sustained a section 300 petition, alleging mother's "limited ability to parent the child . . . due to the child's

3

behavior issues," and mother's inability to provide the child with care and support. Mother initially waived reunification services, but the juvenile court later granted mother's request for services. In 2011, the child was returned to mother's custody and jurisdiction was terminated.

In 2005, four of mother's five children, including Tyra and Dominique, were detained due to domestic violence and failure to protect. The children were declared dependents of the court. A year later, the court ordered termination of jurisdiction in the home of mother.

In 2005, mother became angry at a foster child in her care, and refused to permit her to return home. The allegations of "caretaker absence/incapacity" with respect to the foster child were substantiated.

In connection with the November 2012 incident involving Tyra and Dominique, Tyra's medical report stated: "Child has tenderness to touch to right palm of the hand by 5" finger, no swelling or bruising noted. Hematoma on the right thumb and on the right thumb nail. Per child, mother hit her with a metal serving spoon. Hypopigmented marks on the back, unknown origin." The report concluded the "[f]indings are consistent with history given by the child." The summary stated: "Evaluation suspicious of physical abuse."

Almost four weeks after the November 2012 incident, a Department social worker separately interviewed Tyra, Dominique, and mother. Tyra said she had been punished because of her bad grades, and " 'threw a tantrum in the garage and [she] hit the table a couple of times with [her] hand.' " The right hand was starting to swell and bruise, and then the next day she "smashed" her hand at school in the door. Tyra admitted that she told the deputy sheriff that her mother hit her with a metal spoon, but " 'that was a lie, she didn't.' " Tyra said she lied about being hit so she " 'would get out of trouble.' "

Dominique denied her mother hit her or Tyra. Dominique said she heard "Tyra tell the police and the social worker that she was hit with a spoon but 'that just isn't true.' " Dominique also said that two years ago, she lied to authorities when she told

4

them that her mother gave her a black eye. Dominique blamed her father's youngest son, and admitted that her father told her to lie.

Mother said Tyra's godmother told her that Tyra hit her hand on the table because she was mad. Mother denied hitting Tyra on her back and referred to " 'some discoloration on her skin (on her back).' " Mother also stated she did not hit Dominique. Mother said Dominique's father made up the allegation during their custody dispute, and Dominique actually suffered physical abuse while staying with her father. Mother also recalled that Dominique's medical evaluation " 'concluded the mark was not caused by being hit with someone's hand and that it could not have happened when they said it happened.' " Mother also reported that Dominique recanted the story. Dominique's father, however, told a Department social worker that Dominique told him mother hit her.

The Department raised credibility issues with Tyra's new explanation for her injury, and Dominique's versions of the 2010 incident.

Before the hearing, a Department social worker visited the family on two different occasions. The social worker's opinion was "the children have been instructed not to make any further disclosures and may have been threatened or intimidated in some manner by their mother."

During argument, the childrens' counsel and mother's counsel asked the court to dismiss the petition. The childrens' counsel argued that both girls "recanted the stories that . . . brought this petition before the court and they have been consistent on their recantation." Additionally, the children lived with mother and there were no further incidents. Mother's counsel argued that her client and the children had given the exact same account of what happened.

3.      *The Juvenile Court's Jurisdictional and Dispositional Orders*

The juvenile court sustained the petition pursuant to section 300, subdivisions (a), (b), and (j) as to physical abuse of Tyra, and that such physical abuse endangers a sibling. The juvenile court, however, dismissed the petition as to Dominique, concluding there was insufficient evidence.

5

In its dispositional order, the juvenile court ordered mother to attend and complete a parenting class, and to obtain individual counseling. The children were ordered to receive individual counseling and conjoint therapy with mother.

Mother appealed the orders.

DISCUSSION

1. *Substantial Evidence Supports the Juvenile Court's Jurisdictional Findings*

Mother contends there was no substantial evidence to support the juvenile court's jurisdictional findings pursuant to section 300, subdivisions (a), (b), and (j). The Department has the burden of proving by a preponderance of the evidence that the children are dependents of the court under section 300. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.) Based upon the appropriate standard of review, the Department has met its burden.

a. *Standard of Review*

We review the juvenile court's jurisdictional findings under the substantial evidence test. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) In determining whether there is substantial evidence, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the . . . court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

6

b. *Substantial Evidence Supports the Juvenile Court's Jurisdiction Under Section 300, Subdivisions (a) and (j)*

Mother argues there was no substantial evidence to support the jurisdictional findings pursuant to section 300, subdivisions (a) or (j) because Tyra did not suffer serious physical harm, Tyra recanted her story that mother inflicted physical harm by hitting her with a metal spoon, and there is no evidence that Dominique is at risk.

Under section 300, subdivision (a), the court can take jurisdiction over a child if she has suffered, or there is a substantial risk that the child will suffer, serious physical harm "inflicted nonaccidentally upon the child by the child's parent." Section 300, subdivision (j) provides that the court can take jurisdiction over a child if the "child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

Section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdictional hearing. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.) A parent's " '[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S. O.* (2002) 103 Cal.App.4th 453, 461.) " 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' " (*In re I.J., supra,* 56 Cal.4th at p. 773.)

The record contains substantial evidence to support the juvenile court's finding that it has jurisdiction pursuant to section 300, subdivisions (a) and (j). The evidence showed Tyra had a swollen hand, she had no visible bruising but "shrieked" when the deputy sheriff touched her hand, and Tyra's medical evaluation indicated the injury was consistent with her original version of events. Given Tyra's initial reports to the deputy sheriff, social worker, and medical staff that she had been beaten by her mother with a metal spoon, and she feared further beatings, there was sufficient evidence of a substantial risk of serious physical harm to Tyra and her sibling, given mother's history of dealing with her older daughter's behavioral issues.

7

Mother cites *In Re Roberto C.* (2012) 209 Cal.App.4th 1241, to support the argument that like the evidence in that case, the only evidence here of serious physical harm was a "slight swelling" of one of Tyra's fingers. In *Roberto C.*, there was no evidence presented linking the parents to the injuries of their then nine-month-old son, and no credible evidence establishing that the parents knew Roberto was being abused. (*Id.* at pp. 1248, 1254.) Here, unlike in *Roberto C.*, there is a link to mother – Tyra reported that mother caused her injuries, and Dominique also reported that she had been injured by mother. While the children later recanted, a recantation in these circumstances is not the equivalent of the absence of any evidence.

Contrary to mother's next contention, the record contains substantial evidence that implicated her. Tyra told the authorities that mother hit her with a metal spoon. She later changed her story and stated she injured her hand by slamming it on the table, and on the following day, further injured her hand at school. Mother corroborated only part of Tyra's second version of her injury, but mother gave no explanation why she waited to disclose this information to the Department. While mother asks this court to credit Tyra's second version of the events, issues of fact and credibility are within the province of the juvenile court. (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193.) We do not disturb the jurisdictional finding because substantial evidence supports the juvenile court's order, particularly when mother has a history of inability to parent because of the child's behavioral issues.

Finally, mother contends that Dominique is not at risk as no evidence supports the juvenile court's jurisdictional finding under section 300, subdivision (j). The record contains Department reports that mother responds to behavioral issues and conflict with her children by means of physical abuse. A reasonable inference from this pattern of conduct is that Dominique also is at risk. We reject the argument that Tyra and Dominique were no longer at risk based on mother's representation that there was "no incident" of physical abuse from November 2012 until the February 2013 hearing. The family was under the supervision of the juvenile court and the Department during that

period.  Accordingly, substantial evidence supports the juvenile court's findings with respect to section 300, subdivision (j).

In light of our conclusion, we do not reach the merits of mother's argument that there was no substantial evidence to support the jurisdictional finding pursuant to section 300, subdivision (b).  (*In re Alexis E., supra*, 171 Cal.App.4th at p. 451.)

2. *Mother Did Not Meet her Burden of Showing the Juvenile Court's Disposition Constituted Reversible Error*

Mother's only argument with respect to the juvenile court's dispositional order is that "when jurisdictional findings must be reversed, the dispositional order must also be reversed."  Because we reject mother's arguments regarding the juvenile court's jurisdictional findings, we also reject this argument.

9

DISPOSITION

The orders dated February 5, 2013 are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ALDRICH, J.



We concur:




KLEIN, P. J.




CROSKEY, J.